Zeirei Agudath ISRAEL and Levi Sufrin, On Behalf of themselves and as a Representative of a Class of all others similarly situated, Plaintiffs,

v.

AVIS RENT–A–CAR SYSTEMS, INC., a Delaware corporation, Defendant.

No. 97–0807–CIV–GOLD.

United States District Court,
S.D. Florida,
Miami Division.

Feb. 8, 1999.

374

Tod Aronovitz, Miami, Florida, for Plaintiffs.

Robert T. Wright, Jr., Miami, Florida, Robert Josefsberg, Miami, Florida, and Jonathan J. Lerner, New York City, for Defendant.

## ORDER GRANTING CLASS CERTIFICATION

GOLD, District Judge.

Zeirei Agudath Israel and Levi Suffrin claim that Avis Rent–A–Car Systems, Inc., denied them the benefits of a corporate car-rental account on the basis their religion and ethnicity in violation of 42 U.S.C. § 1981.[1] Specifically, the plaintiffs allege that Avis has created and maintains a "Yeshiva" policy that discriminates against Jewish persons and businesses. Plaintiffs ask this court to certify a class of similarly situated Jewish individuals and businesses who were denied the benefits of an Avis corporate account. Avis contends that *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir.1997) precludes class certification of this, and other disparate treatment cases, because individual questions of law and fact will predominate over common issues. In response to Avis's argument, plaintiffs assert that *Jackson* does not mandate denial of their motion for class

---

1. Section 1981 in its entirety reads as follows:

§ 1981. Equal rights under the law

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined ·

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981 (1994).

certification because this case is factually distinguishable from *Jackson*. Plaintiffs further assert that Avis reads *Jackson* too broadly and that it does not preclude all class actions for disparate treatment. Although the parties disagree as to other class certification issues, the central issue before the court is whether, in light of the Eleventh Circuit's opinion in *Jackson*, the court should certify a class of Jewish individuals and businesses who allegedly have been denied the benefits of an Avis corporate account on the basis of their religion and ethnicity. For reasons stated below, the court concludes that class certification is proper.

## I. FACTS

The corporate telesales department of Avis–Rent–A–Car is located at Avis's World Reservations headquarters in Tulsa, Oklahoma. The telesales or telemarketing division responds to calls from prospective customers who want to rent cars, including those who wish to open corporate accounts. Customers with corporate accounts are entitled to substantial discounts in the price of car rentals and receive corporate award points toward free car rentals. Avis's normal policy is to establish a corporate account for callers who are at least twenty-five years old and will rent a car at least once a month. Ordinarily, when an Avis employee establishes a corporate account, he or she gives the account an identification number that begins with the letter "L".

The complaint alleges that in the early 1990's, the telemarketing division established a policy that segregated callers who had a Jewish accent or a Jewish-sounding name into a special category. These callers were called "Yeshiva." [2] According to the testimony of current and former employees of Avis's telemarketing division [3], Yeshiva who called Avis's telemarketing division and requested a corporate account would not be given a regular corporate account. Some individuals identified as Yeshiva were denied a corporate account entirely. Others were given a so-called "bogus" corporate account, an account that carried a smaller discount than the normal discount rate and did not award the user corporate points. Yeshiva accounts were assigned an identification number that began with the letter "T" or "B". As stated by a former Avis employee, designating bogus corporate accounts in this manner "gave the client the illusion that [he] had opened a corporate account." The complaint further alleges that the Yeshiva policy was also used to cancel corporate accounts once it was discovered that the account holders were Jewish.

Avis admits that it has a "Yeshiva" policy. It fact, Fred Cook, an Avis Telesales Group Leader, stated in a memorandum to Avis sales representatives, "Our friends, the Yeshiva's are beginning to call again more frequently (Please take no offense if any of you are of the Jewish faith.)," [Plaintiffs' Exhibit

2. The word "yeshiva" is defined in *The Random House Dictionary of the English Language* (Unabridged Edition) as follows: 1. an Orthodox Jewish school for the religious and secular education of children of elementary school age. 2. an Orthodox Jewish school of higher instruction in Jewish learning, chiefly for students preparing to enter the rabbinate.

3. Plaintiffs rely on the testimony of William Bruce Ward, a former Avis employee of the Corporate Telesales Department located at Avis's World Reservations Headquarters In Tulsa, Oklahoma; Elaine Rodgers and another former Avis employee regarding the existence and application of the centralized Yeshiva policy to discriminate against Jewish persons. Both Mr. Ward and Ms. Rodgers gave a sworn declaration and deposition testimony to that effect in *Pugh v. Avis Rent A Car System, Inc.*, Case Number 7–96–CV–91–F(2), United States District Court for the

Eastern District of North Carolina. The *Pugh* was a class action filed in the Eastern District of North Carolina, alleging racial discrimination by Avis rental car franchises owned by New Hanover Rent–A–Car, Inc. The purported class consisted of African–American customers of Avis who claim that the New Hanover Avis franchises denied them the right to reserve and rent cars on the same terms as white individuals. *Pugh v. Avis Re A Car System, Inc.*, 1997 WL 669876 (S.D.N.Y.1997). The *Pugh* case was eventually settled. In addition, the plaintiffs rely on deposition testimony of current Avis employees, in supervisory and management positions, including Stephen Culley, Manager of Customer Service for Sales and Services in the Telesales Department for Avis; Shirley Cagle, an Avis account service agent; Michael Fitch, Director of Telesales since 1987; Fred Kruse, a Telesales Group leader since 1993; Wade Cook, a Telesales Manager, and various internal Avis documents.

A to its certification motion] and "You have Wade's approval to be firm with these people in your denying an account if legitimacy cannot be proved." [*Id.*]. Avis contends, however, that the policy has nothing to do with religious discrimination; rather, it claims that the Yeshiva policy is utilized to alleviate the problem of *all* underage drivers [under twenty-five years of age] attempting to use corporate accounts to circumvent the minimum age requirement for renting Avis cars.[4]

The named plaintiffs filed this lawsuit alleging that they were denied accounts because they are Jewish. They want to represent a class of all other Jewish individuals who were similarly denied the benefits of an Avis account on the basis of their religion and ethnicity. The complaint seeks declaratory and injunctive relief as well as damages pursuant to 42 U.S.C. § 1981.

## II. CLASS ACTION CERTIFICATION

To qualify as a class under Rule 23 of the Federal Rules of Civil Procedure, the plaintiffs must initially satisfy the four thresholds requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) questions of law or fact common to the class must exist (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the representative parties must fairly and adequately protect the interests of the class (adequacy of representation). Plaintiffs seeking to represent the class bear the burden of establishing that all four requirements have been met. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 n. 2 (11th Cir.1987); *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir.1984) (A class action may only be certified "if the Court is satisfied, after a rigorous analysis, that the prerequisites of Fed.R.Civ.P. 23(a) are met"). These prerequisites are mandatory and the failure to establish any one is fatal to a motion for class action certification.

In addition to meeting the four preliminary requirements in subdivision (a), the plaintiffs must then satisfy one of the subsections of Fed.R.Civ.P. 23(b) in order for the lawsuit to be maintained as a class action. The plaintiffs assert that they satisfy Rule 23(b)(2) (the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole), and Rule 23(b)(3) (questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy).

It is axiomatic that in order for a class to be certified, the class must be capable of definition. The primary concern underlying the requirement of a class capable of definition is that the proposed class not be amorphous, vague, or indeterminate. 1 H. *Newberg, Newberg on Class Actions* 75 (1977). A class will be deemed sufficiently definite if it is administratively feasible to determine whether a given individual is a member of the class. *Aiken v. Obledo*, 442 F.Supp. 628, 658 (E.D.Cal.1977); *see Ford v. United States Steel Corp.*, 638 F.2d 753, 756 (5th Cir.1981). Classes certified under Rule 23(b)(3) require a precise class definition in order to provide the type of notice to class members required by Rule 23(c)(2) and *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). In this case, plaintiffs propose a class consisting of the following persons.

> All Jewish individuals and Jewish-owned businesses who, subsequent to January 1, 1990, have attempted to contract, have contracted, or will in the future contract with Avis to open an account for use in their business, and who were refused an account, had their account canceled, or were given a less advantageous account because of their religion, ancestry, and/or ethnicity.

The court finds this definition acceptable because it is sufficiently precise to determine

---

4. Avis will not rent to drivers under the age of twenty-five unless the car is rented through a corporate account.

whether a given individual is a member of the class.[5]

## A. CERTIFICATION UNDER RULE 23(a).

Avis challenges class certification arguing that the plaintiffs have failed to meet at least three of the threshold requirements of Rule 23(a).

### 1. NUMEROSITY.

■ The numerosity requirement ensures that a lawsuit will proceed as a class action only if there is a real need for class certification. Under Rule 23(a)(1), the numerosity requirement is met if joinder of all members is impracticable. This requirement does not demand that joinder would be impossible, but rather that joinder would be extremely difficult or inconvenient. *Walco Investments, Inc. v. Thenen,* 168 F.R.D. 315, 324 (S.D.Fla.1996) (impracticable does not mean impossible). Whether joinder of all of the class members would be impracticable depends on the circumstances surrounding the case and not merely on the number of class members. *CV Reit, Inc. v. Levy,* 144 F.R.D. 690, 696 (S.D.Fla.1992). Factors the court should consider include the geographic dispersion of the class members, judicial economy, and the ease of identifying the members of the class and their addresses. *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir.1986) (court looks to size of class, ease of identifying its members, facility of serving process on them, and their geographic dispersion); *Kreuzfeld A.G. v. Carnehammar,* 138 F.R.D. 594, 598–599 (S.D.Fla.1991).

■ To satisfy numerosity, the plaintiffs must proffer some evidence of the number of members in the purported class, or at least a reasonable estimate of that number. *In re Amerifirst Secs. Litig.,* 139 F.R.D. 423, 427 (S.D.Fla.1991). The court may "make common sense assumptions in order to find support for numerosity." *Evans v. United States Pipe & Foundry,* 696 F.2d 925, 930 (11th Cir.1983). It is not necessary that the precise number of class members be known. *Barlow v. Marion County Hosp. Dist.,* 88 F.R.D. 619, 625 (M.D.Fla.1980). The Eleventh Circuit has held that "while there is no fixed numerosity rule, 'generally less than twenty-one is inadequate, more than forty adequate,' with numbers between varying according to other factors." *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986) (quoting 3B *Moore's Federal Practice* section 23.05(1) n. 7 (1978)).

In this case, the plaintiffs assert that the class could consist of thousands of members. The evidence on which they base this assertion includes deposition testimony of former and current Avis employees and Avis's internal documents. For example, one former Avis employee, Bruce Ward, estimated at his deposition that he had turned down thousands of potential customers who had been identified as "Yeshiva." Additionally, during discovery, Avis disclosed the names of forty persons who had been denied accounts in 1994, 1995, or 1996 because they were "Underage Yeshiva." The plaintiffs argue that the existence of this 40–person list is in itself sufficient to satisfy the numerosity requirement.

■ The court finds that allegations of the complaint present several factors which support the plaintiffs' numerosity argument. First, the evidence indicates that the class could include a large number of persons. Second, the relevance of the numerosity requirement may be less significant in cases alleging class-wide discrimination. *Evans,* 696 F.2d at 930. Third, potential class members are geographically dispersed across the United States. Wide geographic dispersion of the potential class members supports a finding that joinder would be impracticable. *See Kernan v. Holiday Universal, Inc.,* 1990 WL 289505 (D.Md.1990) (numerosity requirement met where defendant's companywide

---

5. Because the court has the discretion to limit or redefine the class in an appropriate manner, however, it finds that money damages shall be limited to only those class members ascertainable at the time of the judgment. Injunctive or declaratory relief is appropriate for future members. *See Taliaferro v. State Council of Higher Education,* 372 F.Supp. 1378 (E.D.Va.1974); *Rappaport v. Katz,* 62 F.R.D. 512 (S.D.N.Y.1974), and *Green v. Missouri Pacific Railroad Co.,* 62 F.R.D. 434 (E.D.Mo.1973).

policy of discrimination existed throughout its nationwide chain of spas); *Allen v. Isaac,* 99 F.R.D. 45 (N.D.Ill.1983) (although class of seventeen black employees was not large, geographical dispersion across United States rendered their joinder impracticable). Fourth, the plaintiffs' claims for damages involve only a small amount of money, making it unlikely that they would file separate actions. *See Auto Ventures, Inc. v. Moran,* 1997 WL 306895 (S.D.Fla.1997) (Rule 23 appropriate for redressing rights in cases where claim is otherwise too small to warrant individual litigation). Finally, where the question on numerosity is a close one, a balance should be struck in favor of a finding of numerosity because the court always has the option to decertify pursuant to Rule 23(c)(1). *Evans,* 696 F.2d at 930.

Avis asserts that the plaintiffs have failed to satisfy the numerosity requirement because only two members of the putative class have been identified despite extensive discovery and widespread publicity. On its face, Avis's point is well-taken. But, on balance, applying the factors enumerated above, the court finds that the numerosity requirement has been met on a preliminary basis sufficient to warrant a conditional certification, subject to further evidence as to the actual number of potential class members who may fit the class definitions. Under the circumstances of this case, identifying class members is difficult because much of the information is within the defendant's control. Moreover, because many callers identified as Yeshiva were given a corporate identification number, and were not told that they did not have full benefits, they were unaware of the alleged discrimination. Decertification may be appropriate, following further discovery, if it appears that the plaintiffs are unable to identify a sufficient number of persons who were denied the full benefit of Avis corporate accounts because they were Jewish.

*Siles v. ILGWU Nat'l Retirement Fund,* 783 F.2d 923, 930 (9th Cir.1986).

## 2. COMMONALITY

The second prerequisite of Rule 23(a) is that there must be questions of law or fact common to the class. Commonality[6] requires that there is at least one issue affecting all or a significant number of proposed class members. *Stewart v. Winter,* 669 F.2d 328 (5th Cir.1982); [7] *Kreuzfeld v. Carnehammar,* 138 F.R.D. 594, 599 (S.D.Fla. 1991). The commonality requirement ensures that the interests of other class members will be fairly and adequately protected. *Nelson v. United States Steel Corp.,* 709 F.2d 675, 679 n. 10 (11th Cir.1983). The threshold for commonality is not high. *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir.1993). Factual differences between class members do not preclude a finding of commonality. *CV Reit, Inc. v. Levy,* 144 F.R.D. 690, 696 (S.D.Fla.1992); *see also Walco Invests., Inc. v. Thenen,* 168 F.R.D. 315, 324 (S.D.Fla.1996) (not all of the questions of law or fact raised by the case have to be common to all the plaintiffs). The law requires only that the claims actually litigated in the lawsuit must be those fairly represented by the named plaintiffs. *Cox,* 784 F.2d at 1557 (citing C. Wright & A. Miller *Federal Practice & Procedure,* § 763 at 603); *see also Johnson v. American Credit Co. of Georgia,* 581 F.2d 526, 532 (5th Cir.1978). Where a common scheme is alleged, common questions of law or fact will exist. *See Green v. Wolf Corp.,* 406 F.2d 291, 298 (2nd Cir.1968); *Powers v. Stuart–James Co.,* 707 F.Supp. 499, 502 (M.D.Fla.1989); *Haitian Refugee Center, Inc. v. Nelson,* 694 F.Supp. 864, 877 (S.D.Fla.1988). "[S]uits alleging racial or ethnic discrimination are often by their very nature class suits involving classwide wrongs. Common questions of law or fact are typical-

---

6. The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether, under the particular circumstances, maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. *General Telephone Co. of Southwest v.*

*Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982).

7. The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1982.

ly present." *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

In this case, the plaintiffs allege that for many years Avis implemented and maintained a nationwide Yeshiva policy that segregated Jewish customers for corporate accounts into a group that received no benefits or fewer than those provided to customers who were not Jewish. The discriminatory manner in which Avis allegedly treated all persons believed to be Jewish is the common issue of law and fact shared by the individual and class members. *See Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2nd Cir.1986) (a discriminatory evaluation system applied by one central group to all class members suffices for Rule 23(a) purposes); *Kernan v. Holiday Universal, Inc.,* 1990 WL 289505 (D.Md.1990) (discriminatory nature of defendant's organization is common issue of law and fact shared by individual and class members). Indeed, as discussed further below, the plaintiffs' claims will stand or fall on the resolution of a single common issue germane to the named plaintiffs and the potential class members: did Avis adopt and implement a centralized practice or policy, applied nationwide from its corporate headquarters, of religious or ethnic discrimination against Jewish persons and businesses, or was the policy, as Avis claims, utilized to alleviate the problem of *all* underage drivers attempting to use corporate accounts to circumvent age requirements for renting Avis cars? This single issue common to all class members is alone sufficient to satisfy Rule 23(a)(2).

### 3. TYPICALITY

In order to satisfy the "typicality" prerequisite of Rule 23(a), plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). The central inquiry in determining whether a proposed class has "typicality" is whether the "class representative [is] part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members." *East Texas Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 403,

97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974)). When ascertaining whether typicality exists, the district court is "to focus on whether the named representative's claims have the same essential characteristics as the claims of the class at large." *Appleyard v.. Wallace,* 754 F.2d 955, 958 (11th Cir.1985). A sufficient nexus is established if the claims or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984). Moreover, the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiff and other class members, unless the factual position of the representative markedly differs from that of other members of the class. *Id.*

Here the named plaintiffs' claims are sufficiently "typical" of the claims of the class as a whole so as to satisfy Rule 23(a)(3) requirements. The complaint alleges that the defendant engaged in a continuous course of conduct which evidenced a company-wide policy of discrimination against Jewish individuals and businesses. Plaintiffs allege that the absent members have similar grievances arising from the defendant's discriminatory policy and practices. Since the named plaintiffs' claims arise from the same conduct that gives rise to the claims of the class members, the claims of the named plaintiffs are based on the same legal theory as the class members. Furthermore, the relief sought by the named plaintiffs is compatible with the relief sought, by the class. *Kernan v. Holiday Universal, Inc.* For these reasons, the named plaintiffs' claims are typical of the claims of the class, and the typicality requirement is met. *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3rd Cir.1992).

Avis argues that the United States Supreme Court decision in *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) requires a different result. The court respectfully disagrees. The named plaintiff in *Falcon* was a Mexican–American who was refused a pro-

motion, allegedly on the basis of his national origin. He filed an across-the-board discrimination class action against his employer alleging that the employer maintained a practice of discriminating against Mexican–Americans because of their national origin "with respect to the compensation, terms, conditions, and privileges of employment...." The complaint contained no factual allegations concerning the employer's hiring practices. The Supreme Court framed the issue as follows:

> The question presented is whether respondent Falcon, who complained that petitioner did not promote him because he is Mexican–American, was properly permitted to maintain a class action on behalf of Mexican–American applicants for employment whom petitioner did not hire.

457 U.S. at 149, 102 S.Ct. at 2366. The Court found that the claim of Falcon, who had been hired by the defendant but denied a promotion, was not typical of the claims of other class members, Mexican–Americans who had been denied a job on the basis of their national origin. Evidence presented by Falcon in support of his individual claim for discriminatory promotion practices was entirely different from the evidence required to prove the claims of class members who were not hired. Factual allegations about hiring practices were lacking in the complaint. Consequently, the Court held that the trial court should not have certified the class for across-the-board discrimination. As noted by the Supreme Court, there is a wide gap between (a) the individual's claim that he has been denied a promotion on discriminatory grounds, and *his otherwise unsupported allegation that the company has a policy of discrimination,* and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. *Falcon,* 457 U.S. at 157, 102 S.Ct. at 2370–71 (emphasis added).

Here the situation is different. The named plaintiffs have evidence related to their individual claims of discrimination, but also have specific testimonial and documentary evidence which, if substantiated, shows that Avis utilizes a company-wide policy of discrimination against Jewish persons and businesses seeking to maintain corporate accounts. This documentary and testimonial evidence of discrimination emanating from Avis's corporate headquarters sufficiently "bridges the gap" between the claims of the named plaintiffs and those of the class without the need to rely solely on "inferences" from the particular experiences of the named plaintiffs in order to demonstrate that the class claims are "fairly encompassed" within the claims of the named plaintiffs. *See Falcon,* 457 U.S. at 158–59, 102 S.Ct. at 2371. The need to resort to such inferences in *Falcon* demonstrated that the class claims were not in fact "fairly encompassed" within Falcon's individual claim. *Id.* If the plaintiffs' allegations of across-the-board discrimination against Jewish customers in this lawsuit were based solely on their individual experiences with Avis, the court agrees that class certification would be inappropriate under the standards set forth in *Falcon.* But here the named plaintiffs have significant evidence which, if true, shows that Avis operated under a general policy of discrimination against Jewish individuals and businesses seeking to obtain and retain corporate accounts.[8]

## 4. ADEQUACY OF REPRESENTATION

The fourth condition of Rule 23(a) provides that the representative party must "fairly and adequately protect the interests of the class." Under this criterion, the named plaintiffs must ensure that (1) no conflict of interest exists between them and the putative class members and that (2) the action will be vigorously prosecuted. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). The purpose of this requirement, as with Rule 23's other procedural mandates,

---

8. *See Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. 2364 ("Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotions practices in the same general fashion....").

is to protect the legal rights of absent class members. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir.1987).

■ Courts interpreting the first prerequisite of 23(a)(4) have held that "the primary criterion is the forthrightness and the vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Schatzman v. Talley*, 91 F.R.D. 270, 273 (N.D.Ga.1981). In addition, the representative must not have interests which are antagonistic to those of the planned class. *Gonzales v. Cassidy*, 474 F.2d 67, 73 n. 10 (5th Cir.1973). With respect to class actions for disparate treatment, "the mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination" *Falcon*, 457 U.S. at 157, 102 S.Ct. 2364.

■ According to Avis, the class representatives in this case cannot adequately represent the members of the class because their claims are subject to unique defenses. *See Auto Ventures, Inc. v. Moran*, 1997 WL 306895 (S.D.Fla.1997) (class certification inappropriate where putative class representative is subject to unique defenses which threaten to become the focus of the litigation) (citing *Gary Plastic Pkg. Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176 (2nd Cir.1990)). Avis argues that Suffrin, a student whose name was placed in Avis's Name Risk File, has submitted no evidence that he ever tried to obtain or held an Avis corporate account in his name and is therefore unlikely to prevail. With respect to Zeirei Agudath Israel bookstore, Avis contends that it canceled the bookstore's corporate account for two valid reasons: it had too little rental activity and its rental activity was mostly from renters under the age of twenty-five. In other words, Avis insists that its conduct with respect to the named plaintiffs had nothing to do with the discrimination. But this assertion essentially goes to the merits of the case, and is not appropriate to the issue of class certification now before the court. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732

(1974) (in determining whether to certify a class, the appropriate inquiry is not whether the plaintiffs will prevail on the merits, but whether the requirements of Rule 23 have been met). Both plaintiffs have alleged that they were denied the benefits of an Avis corporate account because of their religion. As such, their interests in the litigation are in common with, rather than in conflict with, the interests of the putative class. A determination that a party can adequately protect the interests of a class is factual and depends on the circumstances of each case. *Eastland v. Tennessee Valley Authority*, 704 F.2d 613 (11th Cir.1983). Based on the allegations of the complaint, the named plaintiffs have satisfied the first adequacy requirement of Rule 23(a)(4). If discovery progresses, and the evidence shows that Suffrin never had or applied for a corporate account, or was never refused a rental under a corporate account, a determination may be made at that time that Suffrin is not an adequate class representative.

The second requirement of Rule 23(a)(4), is that the plaintiffs' attorneys must be "qualified, experienced and generally able to conduct the proposed litigation...." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985). It cannot be disputed that plaintiffs' counsel are experienced in complex litigation, including class actions. The court has observed the high quality of representation provided by plaintiffs' counsel throughout the past year. It finds that plaintiffs' counsel have the experience and skill to conduct this litigation.

Accordingly, the plaintiffs have satisfied the requirements of Rule 23(a).

## B. CERTIFICATION UNDER RULE 23(b).

The real controversy in this case is whether the plaintiffs satisfy the requirements of any of the subsections of Rule 23(b). For in addition to the requirements of Rule 23(a), the named plaintiffs must also show that their action falls within one of the three categories of class suits described in subsection (b). *Hudson v. Delta Air Lines*, 90 F.3d 451 (11th Cir.1996). The plaintiffs argue that this case is appropriate for certification

under Rule 23(b)(2) or 23(b)(3), or both. Actions under 23(b)(2) are appropriate where the party opposing the class has acted on grounds generally applicable to the class and injunctive or declaratory relief is the primary relief sought. In contrast, 23(b)(3) is the section generally invoked if the plaintiffs are seeking predominately money damages, common questions predominate over individual questions, and a class action is superior to other available methods of resolving the controversy. *See Taylor v. Flagstar Bank*, 181 F.R.D. 509 (M.D.Ala.1998). In this case, the plaintiffs are seeking injunctive relief, declaratory relief, and money damages.

### 1. RULE 23(b)(2).

■ Rule 23(b)(2) class certification is warranted when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Plaintiffs contend that Avis has implemented a Yeshiva policy that discriminates against Jewish individuals or Jewish-owned businesses "who have attempted to contract, have contracted, or will in the future contract, with Avis to open an account for use in their business, and who were refused an account, had their account canceled, or were given a less advantageous account" because of their religion or ethnicity. Plaintiffs contend that the Yeshiva policy affected each class member in a manner that violates 42 U.S.C. section 1981, and that Avis has acted on grounds generally applicable to the class. "Generally applicable," as used in Rule 23(b)(2) has been interpreted to mean that the party opposing the class "has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity, or to establish a regulatory scheme, to all members." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1775 at 449 (2d ed.1986). Applying this interpretation, the court agrees with the plaintiffs that if Avis has implemented a "Yeshiva" policy that discriminates against Jewish individuals and businesses by denying them the full benefits of a corporate account on the basis of their religion or ethnicity, this

is the type of pattern or practice envisioned by Rule 23(b)(2). *See* Notes of Advisory Comm. on 1966 Amendment to 23(b)(2), 28 U.S.C.A.App.

■ An action seeking monetary damages cannot fall under (b)(2) unless the final injunctive relief or corresponding declaratory relief is the primary relief sought. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1554 (11th Cir.1986); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 (11th Cir.1983); *Parker v. Local Union No. 1466*, 642 F.2d 104, 107 (5th Cir.1981). Remedies available under 42 U.S.C. § 1981 include special damages, general compensatory damages, nominal damages, punitive damages, attorneys' fees, as well as declaratory and injunctive relief. *Johnson v. Railway Express Agency, Inc.* 421 U.S. 454, 460, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Ferrill v. The Parker Group, Inc.*, 985 F.Supp. 1331 (N.D.Ala. 1997). The plaintiffs are seeking all the remedies provided by the statute. Consequently, the difficult issue in this case is whether the monetary relief is incidental to the plaintiffs' request for final injunctive or declaratory relief.

Plaintiffs assert that the primary relief they seek is equitable because this class action is being used chiefly as a device to eradicate widespread discrimination. *See Jenkins v. United Gas Corp.*, 400 F.2d 28, 34 n. 14 (5th Cir.1968); *see also* 7A Wright & Miller, *supra*, § 1776, at 495–96. Statutory history of Rule 23(b)(2) shows the subsection was intended primarily, although not exclusively, for use in "[c]ivil rights cases against parties charged with unlawful, class-based discrimination." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997). Monetary relief is merely incidental in this case, according to the plaintiffs, because any compensatory damages to individual class members will be modest and a determination as to the amount of these damages is not likely to form a predominant part of the case. Morever, whereas equitable relief is being sought by all members of the class, it appears that a substantial number of plaintiffs may not be entitled to any compensatory damages because they have not incurred a monetary

loss. Avis rejects this contention, arguing that where, as here, plaintiffs seek not only compensatory damages but also punitive damages, the issue of monetary relief will necessarily predominate.

Some courts and leading commentators have taken the position that determining whether one form of relief actually predominates in some quantifiable sense is a wasteful and impossible task that should be avoided. *See e.g.,* 7A Wright & Miller, *supra* at 470. (Disputes over whether an action is primarily for injunctive relief or declaratory relief rather than a monetary award are counterproductive. "If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2). Those aspects of the case not falling within Rule 23(b)(2) should be treated as incidental."). Other courts have concluded that the drafters of Rule 23 intended to impose a predomination requirement for (b)(2) certification, consequently courts must give consideration to the issue of which form of relief actually predominates. *See e.g., Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 411 (5th Cir.1998). In accordance with the latter position, the court now addresses the parties' predominance arguments.

Avis's argument is supported by a recent decision by the Fifth Circuit which held that incidental damages permissible under (b)(2) are those that "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Allison,* 151 F.3d at 411. In other words, "the recovery of incidental damages should typically be concomitant with, not merely consequential to, the injunctive or declaratory relief," and "should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." *Id.* Incidental damages should not "introduce new and substantial legal or factual issues." *Id.; accord Pickett v. IBP, Inc.,* 182 F.R.D. 647, 657 (M.D.Ala.1998) (monetary relief not incidental where compensatory and punitive damages would require individualized proof); *Rice v. City of Philadelphia,* 66 F.R.D. 17, 20 (E.D.Pa.1974) (damages may be awarded under (b)(2) as ancillary relief only in cases in which "the award of damage flows automatically from the grant of injunctive or declaratory relief, and in which the damages are subject to ready calculation on the basis of a formula or principles uniformly applicable to the class."). The *Allison* court concluded that compensatory and punitive damages are not incidental in disparate treatment cases because they require proof of how the discrimination affected each plaintiff. *Id.* at 417. *See also Pickett,* 182 F.R.D. at 647 ("convinced" that the Eleventh Circuit would apply same analysis as *Allison,* court held that action filed under unfair trade practices act could not be certified as a class under (b)(2) because plaintiffs' claims for compensatory and punitive damages would require individualized proof and determinations).

Support for Avis's position also comes from other judges and authorities who have reasoned that claims for punitive damages can never be incidental because the amount involved is necessarily substantial, therefore, punitive damages cannot possibly be part of the relief available under (b)(2). *E.g., Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 929 (9th Cir.1982); *Hernandez v. United Fire Ins. Co.,* 79 F.R.D. 419 (N.D.Ill.1978); *see generally* 32B Am.Jur.2d *Federal Courts* § 1971 (1996).

The court finds that in this case, where the plaintiffs are seeking special damages, general compensatory damages, nominal damages, and punitive damages, the claim for damages is a significant portion of the total relief requested. Moreover, the issues involved in determining whether the plaintiff class is entitled to injunctive or declaratory relief are simply not the same issues involved in determining whether individual members of the class may be entitled to damages. Compensatory damages are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned and both the fact and extent of injury would require individualized proof. Under these circumstances, certification is not appropriate under (b)(2). *See Celestine v. Citgo Petroleum Corp.,* 165

F.R.D. 463, 469 (W.D.La.1995) (certification under (b)(2) not proper where plaintiffs in civil rights case sought compensatory and punitive damages in addition to injunctive relief). In reaching this position, the court has also considered the Eleventh Circuit's opinion in *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999 (11th Cir.1997), wherein the court apparently dismissed outright the propriety of certifying that class under (b)(2) where the plaintiffs were seeking money damages in addition to injunctive relief for alleged violations of § 1981. *See Id.* at 1005 ("The only one of Rule 23[b]'s alternatives that is arguably fulfilled by the Jackson plaintiffs' claims is that found in Rule 23(b)(3) . . . .").

### 2. RULE 23(b)(3).

An action for money damages and injunctive relief can be certified under Rule 23(b)(3). To be certified under Rule 23(b)(3), however, the class must meet two prerequisites, neither of which is applicable under (b)(2): (1) the questions of law or fact common to the members of the class must predominate over any questions affecting only individual members; and (2) the class action must be superior to other available methods for the fair and efficient adjudication of the controversy. Actions brought under (b)(3) are also subject to the provisions in Rule 23(c)(2) requiring that notice be given to all members who can be identified through reasonable effort and each member has the option to be excluded from the class.

### A. Predominance of common questions of law or fact.

■ Under Rule 23(b)(3), courts must consider whether common questions of law or fact "predominate" over purely individual questions. No precise test has been established to assist courts in determining which issues may or may not predominate. *5 Moore's Federal Practice, supra,* at § 23.46. Generally, "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." 7A Wright & Miller, *supra,* § 1778, at 529; *see also CV*

*Reit, Inc. v. Levy,* 144 F.R.D. 690, 699 (S.D.Fla.1992) (if common questions predominate over individual questions as to liability, the predominance requirement can be satisfied even if individual damages issues remain). The predominance inquiry focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy," and is "far more demanding" than Rule 23(a)'s commonality requirement. *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2249–50, 138 L.Ed.2d 689 (1997)). One issue that has been viewed as having overriding significance or predominance is the existence of illegal discrimination. *See Welch v. Board of Directors of Wildwood Golf Club,* 146 F.R.D. 131, 138 (W.D.Pa.1993); *Bennett v. Gravelle,* 323 F.Supp. 203 (D.Md.1971); *Gerstle v. Continental Airlines, Inc.,* 50 F.R.D. 213 (D.C.Colo.1970).

■ Avis argues that the Rule 23(b)(3) requirements are not met in this case because individual issues will predominate over issues common to the class. According to Avis, the Eleventh Circuit's decision in *Jackson v. Motel 6 Multipurpose Inc.,* 130 F.3d 999 (11th Cir.1997), directing the decertification of a class because it failed the predominance requirement, precludes class certification in this case and any future disparate treatment discrimination cases brought in the Eleventh Circuit. The plaintiffs disagree, asserting that *Motel 6* is factually distinguishable from this case, and that *Motel 6* should not be interpreted to preclude all class actions alleging discrimination.

The lawsuit in *Motel 6* was brought by five motel customers who alleged that they were denied lodging or given substandard accommodations on the basis of their race. Two of the named plaintiffs were allegedly denied rooms at the same motel. Each of the other three plaintiffs were allegedly discriminated against at separate motels. The complaint charged that the motel chain denied lodging to African–Americans, Native–Americans, and other non-white persons or, in some cases, gave those patrons substandard accommodations because of race, in violation of

42 U.S.C. § 1981 and the Civil Rights Act of 1964 at 42 U.S.C. § 2000(a). Plaintiffs sought, on behalf of themselves and other customers who had been discriminated against, injunctive relief and money damages. Similar to the plaintiffs in this case, the Jackson plaintiffs argued that the issue common to the claims of all the named plaintiffs and all putative class members was whether Motel 6 had a practice or policy of discriminating against patrons and employees on the basis of race. Unlike this case, however, the evidence in favor of class certification in *Jackson* consisted of *anecdotal individualized accounts* of incidents of disparate treatment. Although the trial court certified the class, the Court of Appeals reversed, holding that the predominance requirement of Rule 23(b)(3) was not satisfied because the plaintiffs' claims would depend on the resolution of highly case-specific factual issues rather than the answer to the question whether Motel 6 has a practice or policy of racial discrimination.

> [P]laintiffs' claims will require distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination. The issues that must be addressed include not only whether a particular plaintiff was denied a room or was rented a substandard room, but also whether there were any rooms vacant when that plaintiff inquired; whether the plaintiff had reservations; whether unclean rooms were rented to the plaintiff for reasons having nothing to do with the plaintiff's race; whether the plaintiff, at the time that he requested a room, exhibited any non-racial characteristics legitimately counseling against renting him a room; and so on … These issues are clearly predominant over the only issue arguably common to the class— whether Motel 6 has a practice or policy of racial discrimination.

*Id.* at 1006.

The named plaintiffs in this case draw a comparison between the manner in which the alleged discrimination was carried out in *Motel 6* and the manner in which Avis employed and documented its "Yeshiva" policy. The racial discrimination in *Motel 6* involved numerous separate acts of wrongdoing allegedly orchestrated by the desk clerks at individual Motel 6 locations. There was no evidence "bridging" or linking the allegations of discrimination by the managers of the individual motels to the policies and procedures of Motel 6. Quoting *Falcon*, the Eleventh Circuit noted that "[c]onceptually, there is a wide gap between (a) an individual's claim that he has been discriminated against on the basis of race, and his otherwise unsupported allegation that the defendant has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claims will share common questions of law or fact." *Id.* at 1004 (brackets omitted). Because there was no significant proof of a company-wide discriminatory policy, the plaintiffs in *Motel 6* could not "bridge the gap" and the case broke down into "an unmanageable variety of legal and factual issues." *See Falcon*, 457 U.S. at 159, n. 15, 102 S.Ct. 2364.

As discussed previously in the sections addressing commonality and typicality, the case against Avis is not dependent on anecdotal evidence of individual class members. It is undisputed that Avis employed a "Yeshiva" policy and that the "Yeshiva" policy emanated from its World Reservations Center. The allegations of discrimination here are based on a documented company policy written by upper management at Avis's World Reservations Center, distributed to its employees by upper management at Avis's World Reservations Center, and monitored by upper management at Avis's World Reservations Center. The proof offered is reliable for certification purposes. *See Davis v. Northside Realty Assoc., Inc.*, 95 F.R.D. at 45, 46 (where proof of liability can be made in a general way, certification is proper, so long as general proof is reliable). Unlike *Jackson*, the resolution of the "overarching" single common issue does not break down into an unmanageable variety of individual legal and factual issues. *Compare Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir.1996). To paraphrase *Jackson*, most if not all of plaintiffs' claims will stand or fall on the question whether Avis has adopted and applied such a centralized policy and practice of ethnic and

religious discrimination, and not on the resolution of the highly case-specific factual issues alluded to by Avis in its briefs and oral argument before the court.[9] This critical common element satisfies the standard set forth in *Jackson*, 130 F.3d at 1006 n. 13.[10]

That fact questions unique to each individual class member may remain after the predominant common question has been resolved does not defeat predominance. *Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield*, 938 F.Supp. 1131 (D.C.N.Y.1996) (Rule 23(b)(3) commonality requirement met even though individual issues existed such as nature of oral misrepresentations to individual member, individual's knowledge of misrepresentations, and individual member's reliance on misrepresentations); *Arenson v. Whitehall Convalescent & Nursing Home*, 164 F.R.D. 659, 664 (D.Ill.1996) (fact that oral misrepresentations were made to plaintiffs does not preclude finding that common issues predominate where misrepresentations also appear in written documents); *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628 (D.S.C.1992) (certification of limited number of issues made class action maintainable despite presence of numerous individual issues); *Simer v. Rios*, 661 F.2d 655, 674 (7th Cir.1981) ("The use of separate trials on individual issues of fact should not be an absolute bar to the use of the class action device"); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683 (D.Ga.1983) (existence of individual questions concerning class members does not defeat certification; the rule requires only that common questions predominate, not that they be unanimous); *Wolfson v. Artisans Sav. Bank*, 83 F.R.D. 547 (D.Del.1979) (that some individual questions need to be litigated does not preclude finding that common issues will predominate).[11] Moreover, numerous cases have held that the existence of separate issues concerning damages sustained by individual members will not prevent a common issue of liability from being adjudicated on a classwide basis. *See, e.g., Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 122 F.R.D. 177, 182 (E.D.Pa.1988) ("While the court may have to take aim at the individual amounts charged each class member for the purposes of damage calculations, such a determination should not preclude class certification when common issues which determine liability predominate."); *De La Fuente v. Stokely–Van Camp Inc.*, 713 F.2d 225, 229 (7th Cir.1983) (class manageable even though damages would be calculated separately for each member); *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 735 (N.D.Ill.1977) ("Even if the damage determinations have to be made on an individ-

9. The Eleventh Circuit in *Jackson*, after enumerating the distinctly case-specific inquires into the facts surrounding each alleged incident of discrimination, stated, "These issues are clearly predominant over the only issue arguably common to the class—whether Motel 6 has a practice or policy of racial discrimination. Indeed, we expect that most, if not all, of the plaintiffs' claims will stand or fall, not on the answer to the question of whether Motel 6 has a practice or policy of racial discrimination, but on the resolution of these highly case-specific factual issues." *Jackson*, 130 F.3d at 1006.

10. In *Jackson*, the question of whether Motel 6 has a practice or policy of racial discrimination was determined to be "irrelevant" to all or nearly all of the plaintiffs' claims. Because Motel 6 employees had general authority to rent motel rooms, the cases were expected to focus on highly case-specific factual inquires to establish or controvert the issue of whether a Motel 6 employee denied each plaintiff a room, or rented him a substandard room, on the basis of race. 130 F.3d at 1006 n. 13. Perhaps the result in

*Jackson* would have been different if the plaintiffs there had documented evidence and testimony from central Motel 6 management that in fact the company had a policy to (1) refuse to rent otherwise vacant rooms to blacks and other white persons, (2) decided to segregate black patrons and other non-white patrons within a single facility, and (3) decided to provide substandard housekeeping and other services to black patrons and other non-white patrons as compared to white patrons. *See* 130 F.3d at 1001. Because of the lack of such evidence, the existence of a policy had to be established by highly case-specific claims of "dozens or hundreds of plaintiffs from around the country" which the court concluded was "undesirable." *Id.* at 1005 n. 10.

11. There are no "fifty state law" questions in this case. *Compare Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir.1996); *Andrews v. American Tel. & Tel. Corp.*, 95 F.3d 1014. This is not a personal injury case in which individual class members might be expected to have strong interests in pursuing individual claims. *In re Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir.1995).

ual basis, ·this should not militate against class certification").

Typically, the existence of illegal discrimination is viewed as having overriding significance which predominates over individual issues. 7A Wright & Miller, *supra*, § 1778 at 534 *citing Gill v. Monroe County Dep't Social Servs.*, 79 F.R.D. 316 (W.D.N.Y.1978) (fact patterns underlying each class member's employment discrimination claim can vary provided that the members of the class have suffered the same or similar grievances); *Bennett v. Gravelle*, 323 F.Supp. 203, 219 (D.Md.1971); *Gerstle v. Continental Airlines, Inc.*, 50 F.R.D. 213, 219 (D.Colo.1970) ("The claims of all members of the class can succeed only if a Title VII violation is found, and if no such violation is found all claims will fail.").

## B. Superiority.

 Rule 23(b)(3) also requires that the class action be superior to other methods of litigation. Superiority is determined by comparing the efficiency and fairness of all available methods of adjudicating the matter. *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 529 (M.D.Ala.). One factor courts look at in making this determination is the size of the proposed class. An action involving a large class is likely to take the place of many separate lawsuits hence judicial economy is served by granting class certification where potentially a large number of plaintiffs are involved. *See In re Amerifirst Secs. Litig.*, 139 F.R.D. 423 (S.D.Fla.1991). In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the ·individual plaintiffs. See Advisory Committee Note to 1996 Amendment to Rule 23.

 In addition, Rule 23(b)(3) includes a list of four factors to help courts determine whether class treatment is superior. These factors include: (A) the interests of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already com-

menced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3).

In the case against Avis, these factors weigh in favor of class certification. Because the size of the anticipated recovery for each plaintiff is small, individual plaintiffs would have little incentive to pursue their own lawsuits. *See Anderson v. Bank of the South, N.A.*, 118 F.R.D. 136, 150 (M.D.Fla.1987) (amount of investment insufficient to justify individual actions). The fact that so few putative class members have filed individual lawsuits suggests that the members are not interested in controlling their own litigation. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 337 (S.D.Fla.1996). Furthermore, the wide geographical dispersion of putative class members makes concentration in one district more efficient. *See Kilgo v. Bowman Transportation, Inc.*, 789 F.2d 859 (11th Cir.1986); *Riordan v. Smith Barney*, 113 F.R.D. 60, 66 (N.D.Ill.1986).

Finally, the court disagrees with Avis's argument that the class would be unmanageable. Issues of class action manageability encompass the "whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164, 94 S.Ct. 2140, 2146, 40 L.Ed.2d 732 (1974). But mere speculation as to the manageability of a class is insufficient to preclude certification. *See Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 363 (S.D.Ga.1996) (A finding of unmanageability requires more than the case will be difficult to try or that the case involves novel challenges). Moreover, there is a strong presumption against denying ·class certification for management reasons. *In re South Central States Bakery Prod. Antitrust Litig.*, 86 F.R.D. 407, 423 (M.D.La.1980); Newberg, *Class Actions* § 5.53. At this stage of the proceedings, it appears to the court that a class action is a

more fair and efficient method of adjudicating this lawsuit than multiple separate trials.[12]

Rule 23(c)(2) provides that individual notice must be given to all members of the class who are identified through reasonable effort if a class is certified under (b)(3). Each member must be advised that he has a right to be excluded from the class and informed that a judgement will bind all members who do not request exclusion. By subsequent order, the court will address all issues related to notice in this class action.

## III. CONCLUSION

For the reasons stated above, the plaintiffs have satisfied the requirements of Rule 23. Accordingly, their motion for class certification is granted. This action may proceed as a class under subsection (b)(3).[13] Nonetheless, decertification may be appropriate if, after sufficient discovery, the plaintiffs fail to identify an adequate number of persons to satisfy the numerosity requirement, or the class becomes unmanageable or inappropriate for any other reason.

In reaching its decision, the court has construed *Jackson's* consideration of the predominance issue as narrowly limited to the facts involved in that case.. This court concludes that *Jackson* does not set forth any bright line test precluding a finding of predominance in class actions based on disparate religious or other discriminatory treatment, but rather applies a far more demanding standard than Rule 23(a) commonality requirements where all or almost all of the proof of the disparate claims may be derived from highly case-specific inquires. *Jackson* leaves unaddressed those situations where there is a documented company policy of discrimination written by upper management, distributed to its employees by upper management, and monitored by upper management at the company's headquarters.. Still, the court acknowledges that its interpretation of *Jackson* could well be incorrect and, therefore opines, pursuant to Federal Rule of Civil Procedure 23(f) as recently amended,[14] that an interlocutory appeal from this order may materially advance the ultimate termination of the litigation.

**12.** This court will bifurcate the liability aspects of the trial; first determining liability issues common to the class, that is, whether a policy and practice of illegal discrimination exists. Only if a policy and practice of discrimination is found will the court determine discrete liability issues.

**13.** If it is determined on appeal that certification under Rule 23(b)(3) is not appropriate, the court finds that this case can be certified under Rule 23(b)(2) without the claims for money damages. Pursuant to 42 U.S.C. § 1988, the plaintiffs are entitled to attorney's fees if they prevail.

**14.** Fed.R.Civ.P. (23)(f) has been amended, effective December 1, 1998, to incorporate a permissive interlocutory appeal provision. According to the Committee Note, new subdivision (f) departs from 28 U.S.C. § 1292(b) in two significant ways. It does not require that the district court certify the certification ruling for appeal, although the district court "can assist the parties and court of appeals by offering advice on the desirability of appeal." Second, it does not include the potential limiting requirement of § 1292(b) that the district court order involve a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.