Mary OSGOOD, on Behalf of Herself and All Similarly Situated Persons, Plaintiffs,

v.

HARRAH'S ENTERTAINMENT, INC., d/b/a Harrah's Atlantic City, Harrah's Atlantic City, Inc.; Marina Associates, Inc.; and Marina Associates, d/b/a Harrah's Casino Hotel Atlantic City, Defendants.

No. CIV. A. 00–284.

United States District Court, D. New Jersey.

Aug. 22, 2001.

Stephen G. Console, Console Law Offices, LLC, Deborah Hart Simon, Mager & White, P.C., Westmont, NJ, for Plaintiffs.

Russell L. Lichtenstein, Cooper, Perskie, April, Niedelman, Wagenheim & Levenson, P.A., A Professional Association, Atlantic City, NJ, for Defendants.

## OPINION

ORLOFSKY, District Judge.

Plaintiff, Mary Osgood ("Osgood"), has moved for class certification pursuant to Fed. R.Civ.P. 23 ("Rule 23"). For the reasons set forth below, I conclude that Plaintiff has satisfied the four prerequisites of Rule 23(a), namely, numerosity, commonality, typicality, and adequacy of representation. Furthermore, because Plaintiff seeks injunctive and declaratory relief from an allegedly discriminatory employment practice, I conclude that Plaintiff's claim for declaratory and injunctive relief is appropriate for maintenance as a class claim pursuant to Rule 23(b)(2). Finally, because I find that Plaintiff's individual claims for monetary damages are not incidental to, but predominate over Plaintiff's claims for equitable relief, I shall deny Plaintiff's request to certify a class as to damages under Rule 23(b)(3).

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff, Mary Osgood, is a Caucasian female who was employed by Defendants, Harrah's Entertainment, Inc., d/b/a Harrah's Atlantic City, Harrah's Atlantic City Inc., Marina Associates, Inc., and Marina Associates, d/b/a Harrah's Casino Hotel Atlantic City (together, "Harrah's") from October 27, 1980 until approximately November 15, 2000. Amd. Compl. at ¶ 26; Transcript, Oral Argument, November 29, 2000 5:17–18.

Osgood alleges that in August, 1999, she was demoted from her position as a shift manager, a "salary grade 23" position which she alleges she had then held for approximately three years. Amd. Compl. at ¶ 28. According to the Complaint, at the time of her alleged demotion, Osgood was offered a position as a casino host, a "grade 17" position which entitled her to fewer employee benefits, such as bonus incentives, stock awards, and participation in deferred compensation plans. Id. at ¶ 30. Osgood alleges that she was replaced by an African American employee, Glenn Cunningham ("Cunningham"), in the position of shift manager at the time of her demotion to casino host. Id. at ¶ 31.

Plaintiff contends that her demotion was the result of discrimination by the Defendants against her and "the class of Caucasian employees and applicants on the basis of their race as a result of the defendants' implementation and application of a legally insufficient affirmative action plan." Amd. Compl. at 1–2. According to Plaintiff, "Defendants' affirmative action plan contains

preferences for racial minorities, and was not effected for remedial purposes.... Because defendants' affirmative action plan was not effected to remedy past discrimination or its effects, and because defendants have used and continued to use race in all of their employment decisions, the defendants have violated federal and state laws prohibiting discrimination in employment." *Id.* at 2.

The "affirmative action plan" to which Plaintiff refers is Harrah's Equal Employment Business Opportunity Plan ("EEBOP"). Pursuant to the New Jersey Casino Control Act, N.J.S.A. § 5:12–1 *et seq.*, all casino licensees are required to develop an EEBOP, "in accordance with an affirmative-action program approved by the [New Jersey Casino Control] commission and consonant with the provisions of the [New Jersey] 'Law Against Discrimination' ["LAD"] [N.J.S.A. § 10:5–1 *et seq.*]" N.J.S.A. § 5:12–134. The New Jersey Administrative Code sets forth a description of the EEBOPs as follows:

> § 19:53–6.1 Equal Employment and Business Opportunity Plan (EEBOP); purpose and basic elements
>
> (a) In order to insure compliance with the requirements of section 134 of the Act and this chapter, each casino licensee and applicant shall be required to submit an Equal Employment and Business Opportunity Plan (EEBOP) to the Commission for its approval. The EEBOP of each casino licensee or applicant shall address in specific terms the strategies, procedures and internal requirements which the casino licensee or applicant intends to implement so that the equal employment opportunity, equal business opportunity and affirmative action objectives and goals of the Act and this chapter are achieved, both on a current and continuing basis.
>
> (b) Each casino licensee or applicant shall be encouraged to use imagination and innovation in the development of its EEBOP. Although, in general, no particular format will be required, every EEBOP prepared by a casino license applicant shall include Sections, at a minimum, addressing the first three basic subject matter areas listed below,

> and every EEBOP prepared by a casino licensee shall contain sections addressing each of the following areas:
>
> 1. General regulatory requirements;
>
> 2. Construction requirements;
>
> 3. Operations work force requirements; and
>
> 4. Business requirements.

N.J.A.C. § 19:53–6.1.

Harrah's has established an EEBOP which describes and governs its affirmative action initiatives. According to copies of Harrah's EEBOP reports submitted by the Plaintiff, Harrah's sets goals with respect to the composition of its workforce based upon race and gender, uses recruitment and selection procedures designed to help it meet these objectives, and analyzes the composition of its workforce periodically to monitor its progress. *See* Pl.'s Exh. B (Harrah's 1998–2000 EEBOP) and C (Harrah's 1996–1998 EEBOP).

Plaintiff contends that her "demotion" occurred as a result of Harrah's EEBOP. Amd. Compl. at ¶ 36. Furthermore, Plaintiff claims that "every promotion that took place at Harrah's included a race based consideration in accordance with Harrah's affirmative action plan." *Id.* at ¶ 35. Accordingly, Plaintiff seeks to certify the following class:

> [A]ll individuals of the Caucasian race who have been and are subject to defendants' affirmative action plan within the state of New Jersey and the racial preferences contained therein during the time period of 1998 up through to the present.

*Id.* at ¶ 11. Specifically, Count I of Plaintiff's Amended Complaint alleges the violation of Plaintiff's and the class's rights under 42 U.S.C. § 1981. Count II alleges the violation of the Plaintiff's and the class's rights under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5–1 *et seq.* Finally, Count III alleges the violation of Plaintiff's and the class's rights under 42 U.S.C. § 1983.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28

U.S.C. §§ 1331[1] and 1367.[2]

## III. THE LEGAL STANDARDS GOVERNING CLASS CERTIFICATION

Rule 23 of the Federal Rules of Civil Procedure governs the certification of classes and the maintenance of class actions. Rule 23(a) sets forth four general prerequisites for the certification of a class:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law of fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). As the Third Circuit recently explained, "[t]he certification requirements of Fed.R.Civ.P. 23(a) embrace two rudimentary principles: 1) the necessity and efficiency of adjudicating the claims as a class and 2) the assurance of protecting the interests of absentee members." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 at 181 (3d Cir.2001) (citations omitted). "If the class does not satisfy each of the 23(a) criteria, the suit cannot be maintained as a class action." *Id.*

In addition to finding that plaintiff(s) have satisfied the four requirements of Rule 23(a), a District Court must also determine, pursuant to Rule 23(b), that one of the following three rationales justifies the maintenance of the suit as a class action:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) [] questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b). In this case, Plaintiff originally sought certification pursuant to subsections (b)(1)(A) and (b)(1)(B), and argued, in the alternative, that the proposed plaintiff class also met the requirements of (b)(2). Pl.'s Br. at 18–19. In a "Supplemental Reply Memorandum," however, Plaintiff asked the Court to adopt "a bifurcated certification procedure," also referred to as "hybrid certification," combining aspects of Rule 23(b)(2) and 23(b)(3). Pl.'s Suppl. Reply at 1. According to Plaintiff:

In a nutshell, a hybrid certification consists of two stages. During the first, liability is resolved under Rule 23(b)(2) and claimants may not opt out of the class. *Shores v. Publix Super Markets, Inc.*, 69 Empl. Prac. Dec. ¶ 44,477 [1996 WL 407850](M.D.Fla.1996). During stage two,

---

1. This section provides, in relevant part, as follows: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

2. This section provides, in relevant part, as follows:
 (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the

district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
28 U.S.C. § 1367.

legal damages are resolved, and claimants may opt out of the class, in accordance with Rule 23(b)(3)'s opt-out procedures.

Pl.'s Suppl. Br. at 1. Plaintiff argues that the use of so-called "hybrid certification" is appropriate in "discrimination cases in which the class seeks both equitable relief and money damages," as does the class in this case. *Id.*

 The plaintiff bears the burden of showing that the proposed class action satisfies the requisites of Rule 23(a) and the conditions of the relevant subsection(s) of Rule 23(b). *See, e.g., Stephenson v. Bell Atl. Corp.,* 177 F.R.D. 279 at 284 (D.N.J.1997)(Simandle, J.); *Stadler v. McCullouch,* 949 F.Supp. 311, 314 (E.D.Pa.1996). While the merits of a putative class representative's substantive allegations should not factor into the court's decision regarding class certification, the court should "rigorous[ly] analy[ze]" the allegations of the complaint relating to the maintainability of the action as a class action. *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *see, e.g., Stephenson,* 177 F.R.D. 279 at 284; *Burkhalter Travel Agency v. MacFarms Int'l, Inc.,* 141 F.R.D. 144, 152 (N.D.Cal.1991).

Pursuant to the strictures of Fed.R.Civ.P. 23, then, I shall first consider whether the plaintiff and the putative plaintiff class meet each of the four requirements of Rule 23(a), namely, numerosity, commonality, typicality, and fairness and adequacy of representation. If I conclude that the Plaintiff and the class satisfy each of these requirements, I shall then determine whether Plaintiff and the class are entitled to a "hybrid certification" under the combined provisions of Fed. R.Civ.P. 23(b)(2) and (b)(3).

## IV. ANALYSIS

### A. Standing

As a threshold matter, Defendants argue that the named plaintiff, Mary Osgood, lacks standing to assert claims on behalf of some members of the putative class. Specifically, Defendants characterize Osgood as an "upper-level management, non-union, supervisory employee" who claims she was demoted and replaced by a member of a minority group. Defs.' Br. at 11. Based on this characterization of Plaintiff and her claims, Defendants contend that Osgood lacks standing to represent persons who:

(1) applied for but did not receive positions with the defendant;

(2) applied for but did not receive promotions with the defendant;

(3) were terminated by the defendant;

(4) were subjected to disparate discipline or sanctions by the defendant; and

(5) did not receive commensurate benefits, bonuses, pay or other perquisites of employment.

Defs.' Br. at 11–12.

The Third Circuit recently set forth the following explanation of the requirements for standing:

> The standing requirements embodied in the "case" or "controversy" provision of Article III of the United States Constitution mandate that in every case, the plaintiff be able to demonstrate: An "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; second, [that] there [is] a causal connection between the injury and the conduct complained of—the injury has to be "fairly trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court. Third, [that] it [is] "likely," as opposed to merely "speculative" that the injury will be redressed by a favorable decision.

*Schurr v. Resorts Int'l Hotel,* 196 F.3d 486, 491 (3d Cir.1999) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

 As a threshold matter, individual standing is a prerequisite for the maintenance of all actions, including class actions. *Fallick v. Nationwide Mutual Ins. Co.,* 162 F.3d 410, 423 (6th Cir.1998) (citing *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). There is no additional standing re-

quirement for a plaintiff who seeks to represent a class. *See, e.g., O'Shea,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674. Questions relating to Article III standing, however, frequently overlap and are sometimes confused with the criteria required for class certification embodied in Fed.R.Civ.P. 23(a). A leading commentator on class actions offers the following explanation of the relationship between standing and the Rule 23 criteria in a prospective class action:

> Though there is no additional standing requirement for the plaintiff who seeks to represent a class, a proper class action requires a similarity of claims between the named plaintiffs and the class members. This similarity of claims is tested not by principles of standing, but by the application of the Rule 23(a)(3) criteria. If a class action is proper, then by definition the class representative's claims will be typical of the class. Thus the class plaintiff's individual standing, linked to his or her asserted claim, becomes automatically linked to the class claim. Having standing which a class representative shares with the members of a class is another way of saying that the class representative is a proper party to raise a particular issue common to the class. The commonness of issues is an express requirement of Rule 23 and is an attribute of the issue involved, rather than a threshold characteristic of whether the issue meets the constitutional case or controversy test. Accordingly, a plaintiff who meets individual standing requirements possesses [standing] in the constitutional sense, and whether the plaintiff may represent the rights of others depends on the application of Rule 23 tests in the case of a class action[.]

HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS AC-

TIONS § 2.05 (3d ed.1992). *See also Fallick,* 162 F.3d at 423.[3]

■ Accordingly, to determine whether Osgood has individual standing, I must evaluate her claims in light of the three criteria identified by the Third Circuit in *Schurr.* Osgood, a Caucasian female, claims that she was demoted from her position as a shift manager based on her race. With respect to the first criterion, the Supreme Court has held that "the 'injury in fact' in an equal protection case ... is the denial of equal treatment resulting from the imposition of a barrier[.]" *Northeastern Fl. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 508 U.S. 656, 666, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). Osgood's claim, insofar as she alleges that she was denied equal treatment, based on her race, pursuant to Defendants' EEBOP policy, clearly satisfies this requirement. *See Schurr,* 196 F.3d at 491. Furthermore, Osgood has adequately alleged a causal connection between the injury of which she complains and the Defendants' conduct, in that she charges that her alleged demotion and subsequent replacement by an African–American employee were the direct result of Harrah's implementation of its EEBOP, an affirmative action program which Osgood alleges favors minorities. *See Schurr,* 196 F.3d at 491. Finally, it is likely that Osgood's injury would be redressed through a favorable decision on the merits. *Id.* Since Osgood's claim satisfies these criteria, I conclude that Osgood has individual standing to assert a claim of race discrimination in violation of 42 U.S.C. §§ 1981 and 1983, and the NJLAD. Accordingly, I shall proceed to consider whether Osgood is able to meet the prerequisites of Fed.R.Civ.P. 23.

---

**3.** In *Fallick,* the Sixth Circuit discussed the distinction between individual standing and class certification as follows:

> As this Court has made clear, however, "once an individual has alleged a distinct and palpable injury to himself he has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants." *Senter v. General Motors Corp.,* 532 F.2d 511, 517 (6th Cir.1976). Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure. *See Cooper v. University of Texas at Dallas,* 482 F.Supp. 187 (N.D.Tex.1979); HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS §§ 2.05 (3d ed.1992).

*Fallick,* 162 F.3d at 423.

## B. Rule 23(a) Prerequisites

### 1. Numerosity

■ To meet the first requirement of Rule 23(a), a plaintiff seeking certification of a class must demonstrate that the class is so numerous that joinder of all members is impracticable. Fed.R.Civ.P. 23(a). "In determining whether the numerosity requirement is satisfied, the court should consider the estimated number of parties in the proposed class, the expediency of joinder, and the practicality of multiple lawsuits." *Cannon v. Cherry Hill Toyota, Inc.,* 184 F.R.D. 540, 543 (D.N.J.1999) (Simandle, J.). As one court has observed, however, "[n]o magic number exists satisfying the numerosity requirement, nor must plaintiff allege the exact number or identity of class members." *Moskowitz v. Lopp,* 128 F.R.D. 624, 628 (E.D.Pa.1989). Instead, "it is proper for the court 'to accept common sense assumptions in order to support a finding of numerosity.'" *Id.*

■ Osgood alleges that as of December 31, 1998, Harrah's employed approximately 3,176 people, of whom 1,796 were Caucasians. Pl.'s Br. at 9; Pl.'s Exh. B (Harrah's EEBOP 1998–2000). Based on data contained in Harrah's 1998–2000 EEBOP, Osgood calculates that in the one-year period between January 1, 1998 and December 31, 1998, there were 154 opportunities for employment positions in "underutilized" EEO categories including Officials and Managers, Professionals, Technicians, and Operatives. Pl.'s Br. at 10 (citing Pl.'s Exh. B. (Harrah's 1998–2000 EEBOP) at 5–17). Osgood asserts that "33 of the 154 positions were filled by minorities pursuant to the racial preferences, goals and objectives set forth in Harrah's EEBOP." *Id.* She contends that the potential number of class members who were rejected or denied for these positions based on their race can be ascertained from Harrah's records, and asserts that "this number more than

likely exceeds the number of positions available." *Id.* Similarly, and again citing Harrah's 1998–2000 EEBOP report, Osgood states that during a five-month period in 1998, 502 individuals applied for positions at Harrah's, and of the eighty-six positions filled, fifty-two, or approximately 60%, were filled by minorities. *Id.* At oral argument, counsel for Osgood stated that "we have counted as of now approximately 700 terminated employees," and further asserted that "between four and five hundred promotions [] went to minorities that we—for whom non-minority candidates may have been eligible." Transcript, Oral Argument, November 29, 2000 at 6:1–4.

Defendants submit that Plaintiff "has come forward with only the most vague and speculative claims as to the size of the proposed class in this litigation." Defs.' Br. at 14. While Defendants are correct that Plaintiff has not provided an exact calculation of the number of potential class members, at this point in the litigation Plaintiff is not required to do so. *See Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.,* 149 F.R.D. 65, 73 (D.N.J.1993). Furthermore, courts have held that the requirements of Rule 23(a), and particularly, the numerosity requirement, may be more liberally construed in civil rights cases in which injunctive relief is sought. *See, e.g., Jones v. Diamond,* 519 F.2d 1090, 1100 (5th Cir.1975).[4]

Other factors should also be considered as part of the Rule 23(a)(1) inquiry, including whether judicial economy weighs in favor of class certification, and the geographic dispersion of class members. *See* HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 3.06 (3d ed.1992); *see also Council of the Blind v. Regan,* 709 F.2d 1521, 1543 n. 48 (D.C.Cir.1983) (Robinson, C.J., dissenting). In terms of geographic dispersion, Plaintiff asserts that the class

---

4. As the Fifth Circuit explained,

The general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1). Although the district court has great discretion on the numbers involved and the practicality of joinder, its freedom is not unlimited. Wide discretion "must be balanced with the nature and intent of the Civil Rights

Act, whose purpose is to provide a broad remedy for all who fit the plaintiff's class." *Carey v. Greyhound Bus Co.,* 500 F.2d 1372, 1380 (5th Cir.1974). Smaller classes are less objectionable where, as in the case before us, the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members.

*Jones,* 519 F.2d at 1100.

is "fairly far-flung," and that there are putative class members as far away as Virginia. Transcript, Oral Argument, November 29, 2000 at 6:9–12. Furthermore, Plaintiff asserts that Harrah's has recruited employees in locations such as Chester, Pennsylvania, Washington DC, and Charleston, N.C. *See* Pl.'s Reply Br. at 6–7 and Exh. 12 (Harrah's 1999 EEBOP Self–Assessment) at 50.

Based on the fact that Plaintiff is seeking, *inter alia,* injunctive relief for alleged violations of federal law, and that the putative class appears to be geographically diverse, I conclude that Plaintiff's failure to identify with more precision the exact number of members of the class or their location(s) is not, by itself, fatal to Plaintiff's motion for class certification. Accordingly, I conclude that Plaintiff has made an adequate showing of numerosity, and I shall proceed with the remainder of the Rule 23 analysis.

## 2. Commonality

As the Third Circuit has noted, "[t]he questions of commonality and typicality are broadly defined and tend to merge, because they focus on similar aspects of the alleged claims." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 at 182 (3d Cir.2001). "Commonality requires the presence of 'questions of law or fact common to the class,' *see* Fed.R.Civ.P. 23(a)(2), whereas typicality demands that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Id.* The Third Circuit has summarized the distinction between commonality and typicality as follows: "[C]ommonality, like 'numerosity' evaluates the sufficiency of the class itself, and 'typicality' like 'adequacy of representation' evaluates the sufficiency of the named plaintiff ..." *Hassine v. Jeffes,* 846 F.2d 169, 176 n. 4 (3d Cir.1988).

■ I note that the commonality requirement does not require Plaintiff to demonstrate that the questions of law and fact presented by her claim are identical to those attributed to the putative class. *Baby Neal*

*For and By Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994). Instead, "[t]he commonality requirement will be satisfied if the named plaintiff(s) share at least one question of fact or law with the grievances of the prospective class." *Id.* Accordingly, this requirement is generally easily met. *Id.*

Plaintiff argues that the proposed class satisfies the commonality requirement because Harrah's, pursuant to its EEBOP, has engaged in a "standard course of conduct" by "deny[ing][] employment opportunities such as job positions, promotions, potential for advancement and management training on the basis of the race of the applicant or employee." Pl.'s Br. at 12. The Supreme Court has acknowledged that "suits alleging racial or ethnic discrimination are often by their very nature class suits, involving class-wide wrongs. Common questions of law or fact are typically present." *E. Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 405–406, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). The Court, however, also cautioned that "careful attention to the requirements of Fed. Rule Civ. P. 23 remains nonetheless indispensable," and noted that "the mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination." *Id.; see also Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 158–160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Defendants argue that Plaintiff has failed to satisfy Rule 23(a)(2) because "there is patently no 'commonality' between a plaintiff such as Ms. Osgood, a Caucasian female in a non-union, high level management position, who claims to have been demoted in order to provide an opportunity for a minority, and, for example, a male Caucasian who was allegedly not hired for an entry level position at the casino." Defs.' Br. at 18. To support this contention, Defendants cite *Scott v. University of Delaware,* 601 F.2d 76 (3d Cir. 1979).[5] Defendants' argument, however, is more properly addressed to the third re-

---

5. I note that the Supreme Court denied *certiorari* in this case, *see Estate of Scott v. University of Delaware,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979). I further note that the hold-

ing of this case has been abrogated by the Third Circuit, *see EF Operating Corp. v. American Bldgs.,* 993 F.2d 1046 (3d Cir.1993).

quirement of Rule 23(a), typicality, insofar as Defendants' argument is directed toward the question of whether this plaintiff's claims are typical of the those of the plaintiff class. As noted above, the central question in the commonality analysis is whether the plaintiff can identify questions of law and/or fact which are common to the class as a whole.

Indeed, the fact that Defendants have confused the requirements of commonality and typicality is revealed by their reliance on *Scott.* In *Scott,* the Third Circuit considered an African–American professor's argument that his claims, based on the defendant university's allegedly discriminatory refusal to offer him tenure, were representative of a class of persons which included applicants who were never hired by the defendant university. The Court concluded that, because the plaintiff's interest in tenure conflicted with the putative class members' interests in obtaining faculty positions of any kind, the plaintiff's interests were not *typical* of the class's interest. *Scott,* 601 F.2d at 86. Because the plaintiff failed to show that his claims were *typical,* the Third Circuit reversed the District Court's holding and decertified the class.

■ Bearing in mind the difference between commonality and typicality, I conclude that the claims alleged by Plaintiff in this case satisfy the commonality requirement of Rule 23(a). Plaintiff's individual and class claims challenge the legality of Harrah's EE-BOP affirmative action program. The EE-BOP is a company-wide policy mandated by New Jersey State law. Plaintiff's claims clearly raise questions of law which are common to putative class members who have allegedly experienced race-based employment discrimination pursuant to Harrah's employment practices in implementing its EEBOP. Accordingly, Plaintiff has satisfied the commonality requirement.

### 3. Typicality

■ Unlike numerosity and commonality, which focus on the characteristics of the class as a whole, the last two requirements of Rule 23(a), typicality and adequacy of representation, focus on the characteristics of the would-be class representative. Specifically, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). As the Third Circuit has explained, "[t]ypicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Baby Neal,* 43 F.3d at 57–58 (quoting *Hassine,* 846 F.2d at 177). Factual differences, however, "will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id.* at 58. "'Typical' is not identical." *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985), *cert. denied sub nom., Weinstein v. Eisenberg,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). As the Ninth Circuit explained, "[t]he test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct.'" *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992) (citation omitted).

In asserting that her claims are typical of those of the putative class, Plaintiff relies heavily on the theory that Harrah's made employment decisions concerning interviewing, hiring, firing, promoting, and demoting employees in general, and her specifically, pursuant to the affirmative action plan outlined in its EEBOP. According to Plaintiff,

> The discriminatory policy outlined in the EEBOP and embraced at all levels of Harrah's management by its own admissions in the EEBOP is a common course of conduct against all plaintiffs in the putative class. Each and every claim applicable to the class is premised upon defendants' discriminatory conduct commonly directed to the Caucasian class members as a group...At the heart of the class claims is the fact that the class was deprived of and continues to be deprived of employment opportunities as a result of Harrah's implementation of the EEBOP. .

Pl.'s Br. at 16. To support this claim, Plaintiff cites several cases in which courts have found that the existence of documentation of an entity's general policy of discrimination suffices to establish typicality.[6] *See, e.g., Welch v. Bd. of Directors of Wildwood Golf Club*, 146 F.R.D. 131, 135 (W.D.Pa.1993) (holding that the Wildwood Golf Club's constitution and by-laws, which governed transferability of membership in the case of death and divorce, adequately established typicality of plaintiff's claim of gender-based discrimination).

Plaintiff's argument is supported by the Third Circuit's holding, in *Baby Neal*, that "[w]here an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Baby Neal*, 43 F.3d at 58. Citing *Baby Neal*, my colleague, Judge Simandle, explained, "when the same unlawful conduct was directed at or affected both the named plaintiffs and the members of the putative class, the typicality requirement is usually met, irrespective of varying fact patters that may underlie individual claims." *Cannon v. Cherry Hill Toyota*, 184 F.R.D. 540 (D.N.J.1999).

■■■ In this case, Plaintiff asserts that her claim, as a Caucasian individual who was allegedly denied an employment opportunity based on her race, pursuant to Harrah's EEBOP affirmative action plan, is typical of the claims of all Caucasians who may have applied for and been denied an employment opportunity or benefit at Harrah's. While the Defendants contend that Plaintiff's status, as a supervisory non-union employee, defeats her claim of typicality because she cannot purport to represent the claims of, for example, non-supervisory, union employees or job applicants, I disagree. Insofar as Plaintiff seeks injunctive and declaratory relief as to the validity of Harrah's EEBOP, her claims are typical of the class of Caucasian employees of Harrah's and those job

applicants who sought employment with Harrah's. Thus, to the extent that Plaintiff frames her claim in the context of the declaratory and injunctive relief she seeks, namely, enjoining Harrah's from utilizing its EEBOP or other race-based criteria in making employment decisions, Plaintiff's claim is typical of the class claim.

Defendants assert, however, that Plaintiff's claim is atypical and inappropriate for class certification because Plaintiff's claims are subject to a unique and specific defense. Specifically, Defendants assert that "Osgood's claim is subject to the specific defense that her own inadequate performance in her assigned position was the reason for the self-describe[d] 'demotion.'" Defs.' Br. at 21. Counsel for Plaintiff dismissed this argument at oral argument, stating "that argument is going to be made for each person that we bring in to this courtroom because that is how Harrah's is defending this case." Transcript, Oral Argument, November 29, 2000 at 16:7–8.

The Second Circuit has explained the danger posed by the existence of a unique defense as follows:

> While it is settled that the mere existence of individualized factual question with respect to the class representative's claim will not bar class certification, *see, e.g., Green*, 406 F.2d at 301; *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 98–99 (S.D.N.Y.1981), class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, *see, e.g., Kline v. Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y., 1981) *aff'd* in relevant part, 702 F.2d 400, 403 (2d Cir.1983); *J.H. Cohn & Co. v. American Appraisal Assoc., Inc.*, 628 F.2d 994, 998–999 (7th Cir.1980). Regardless of whether the issue is framed in terms of the typicality of the representative's claims, Rule 23(a)(3), Fed.R.Civ.P., or the adequacy of its representation, Rule 23(a)(4), there is a danger that absent class

6. I note that one of these cases, *Israel v. Avis Rent-A-Car Systems, Inc.*, 185 F.R.D. 372 (S.D.Fla.1999), was reversed *sub nom., see Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228 (11th Cir.2000), and *cert. denied sub nom., Zeirei Agudath Israel Bookstore v. Avis Rent-A-Car System, Inc.*, —— U.S. ——, 121 S.Ct. 1354, 149 L.Ed.2d 285 (Mar. 19, 2001).

members will suffer if their representative is preoccupied with defenses unique to it.

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990), *cert. denied,* 498 U.S. 1025, 111 S.Ct. 675, 112 L.Ed.2d 667 (1991).

It is not the Court's role, in reviewing a motion for class certification, to pass on the merits of the underlying claims, and I have no intention of doing so here. *See Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The Court, may, however, review facts revealed in discovery as part of the process of evaluating whether the requirements of Rule 23 have been satisfied. *See Cannon,* 184 F.R.D. at 543. To that end, I note that Defendants have provided evidence, in the form of Plaintiff's own testimony, which supports their claim that Plaintiff's job performance was unsatisfactory and counters Plaintiff's claim that she was "replaced" with an African–American employee. *See, e.g.,* Defs.' Exh. A at 134, 170–175. (Testimony of Mary Osgood). Accordingly, I conclude that Harrah's has demonstrated the existence of a unique and specific defense applicable to Osgood which weighs against a finding of typicality.

Based on the foregoing analysis, I conclude that Plaintiff has satisfied the requirement of typicality only with respect to her claims for declaratory and injunctive relief on the legality of Harrah's EEBOP. I note that Harrah's also contests Plaintiff's ability to satisfy the typicality requirement as to damages by asserting that Plaintiff's interests, as an upper-level, supervisory, non-union employee, conflict with those of putative class members who occupy or applied for non-supervisory employee positions. Because I have determined, on the basis of the foregoing analysis of the damages plaintiff has requested and the existence of a defense specific to the Plaintiff, that Plaintiff's claims are typical only to the extent that Plaintiff seeks declaratory and injunctive relief, I need not address Defendants' argument on the potential conflict between Plaintiff and the putative class members on the issues of damages.

### 4. Fair and Adequate Representation

The final factor which the Court must consider under Rule 23(a) is whether "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "The Rule 23(a)(4) analysis involves a two-pronged inquiry: (1) whether the named plaintiffs' counsel is competent by qualification and experience to conduct the litigation; and (2) whether the named plaintiffs' interests are antagonistic to the class." *Cannon,* 184 F.R.D. at 544; *see also Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415 (1975). The adequacy of representation requirement overlaps with Rule 23(a)(2)'s commonality requirement and Rule 23(a)(3)'s typicality requirement, to the extent that all three requirements call for the Court to determine whether judicial economy and the procedural due process rights of the putative class members will be served by the certification of the class. *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364.

With respect to the first prong of this analysis, Defendants originally asserted that "plaintiff's counsel have come forward with nothing to demonstrate their experience, skill, success, or training, in conduct [sic] class actions in general, or in a class action of this nature." Defs.' Br. at 24. In response, counsel for the Plaintiff, Stephen G. Console, Esq., and Carol A. Mager, Esq., submitted certifications describing their respective experience in the prosecution of employment discrimination, civil rights, and other class action litigation. *See* Pl.'s Reply Br., Exhs. A (Certification of Carol A. Mager, Esq.) and B (Certification of Stephen G. Console, Esq.). Defendants do not dispute the qualifications of Ms. Mager and Mr. Console, and appear to have abandoned this argument in their Supplemental Response Brief. Because it is clear to the Court from the certifications of counsel that Plaintiff is well-represented, and because Defendants have, insofar as they abandoned their opposition on this ground, apparently reached the same conclusion, I hold that the Plaintiff has satisfied this prong of Rule 23(a)(4).

With respect to the second prong of Rule 23(a)(4), Defendants contend that Osgood's interests are antagonistic to those of the class for three reasons. First, Defendants claim that Osgood, because she is female, is a beneficiary of the gender-specific affirmative action provisions of Harrah's EEBOP. Because Osgood's interests as a female may conflict with her interests as a Caucasian, Defendants argue, she cannot adequately represent Caucasians. Second, Defendants contend that Osgood's interests as a supervisor may be antagonistic to the interests of prospective class members who occupied non-supervisory or subordinate positions. Finally, Defendants claim that Osgood cannot adequately represent the putative class because, by Osgood's own admission, she herself utilized the criteria of the program which she is now challenging, the EEBOP, in making employment decisions about employees whom she supervised and applicants for positions which she supervised.

I reject Defendants' arguments because I believe that none of these purported conflicts relate directly to or otherwise substantially affect the Plaintiff's ability to represent the class on the narrow claims which remain eligible for class certification, namely, the claims for declaratory and injunctive relief. Plaintiff's remaining claims constitute a facial challenge to the legality of Harrah's EEBOP. Plaintiff alleges, and Harrah's does not dispute, that Harrah's EEBOP was uniformly applied to all employees and applicants, regardless of their managerial or union status.

Accordingly, I conclude that Plaintiff, as a Caucasian individual with an interest in employment opportunities at Harrah's to whom Harrah's EEBOP applies, may adequately represent the interest of putative class members, namely, Caucasians with an interest in employment opportunities at Harrah's to whom Harrah's EEBOP applies. *See Wetzel,* 508 F.2d 239, 247–248 (holding that interests of plaintiffs, former employees of defendant company, in combating discriminatory policies were coextensive with the interest of all former and present employees subjected to the discriminatory policy).

## C. Rule 23(b) Analysis

Having found that the Plaintiff has satisfied the four prerequisites necessary for class certification pursuant to Rule 23(a), I must now determine whether these claims may be properly maintained as class claims under one of the provisions of Fed.R.Civ.P. 23(b). Plaintiff originally argued that she was entitled to maintain this action under Rule 23(b)(1)(a) [7], 23(b)(1)(B) [8], and, in the alternative, 23(b)(2) [9]. As I noted previously, however, in a "Supplemental Reply Brief" and at oral argument, Plaintiff instead requested certification pursuant to a "hybrid" theory which combines elements of Rule 23(b)(2) and 23(b)(3).[10] Essentially, Plaintiff now asks the Court to certify a (b)(2) class as to the claims for declaratory and injunctive relief, and a (b)(3) class as to the claims for monetary relief, thereby effectively granting

7. This section provides, in relevant part, as follows:

An action may be maintained as a class action if the prerequisites of subdivision(a) are satisfied, and in addition:
(b)(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

Fed.R.Civ.P. 23(b)(1)(A) and (B).

8. *See id.*

9. This section provides, in relevant part, that a class action may be maintained if the prerequisites of Rule 23(a) are satisfied and: "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or"

10. This section provides, in relevant part, that a class action may be maintained if the prerequisites of Rule 23(a) are satisfied and: "[] questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient." Fed.R.Civ.P. 23(b)(3).

(b)(3) protections to the class, including the right to opt out at the monetary relief stage. Pl.'s Suppl. Reply Br. at 2.

### 1. Rule 23(b)(2)

The plain language of Rule 23(b)(2) provides that the maintenance of a class action is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). By its terms, this provision, insofar as it explicitly references the availability of declaratory and injunctive relief for a pattern of conduct, is clearly the appropriate provision under which to consider the Plaintiff class's challenge to the legality of Harrah's EEBOP and corresponding request for injunctive relief. *See Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 411 (5th Cir.1998). Indeed, the purpose of (b)(2) is to make injunctive and declaratory relief available to remedy "systemic violations of large and often amorphous classes," and it is particularly suited to civil rights cases. *Baby Neal,* 43 F.3d at 64. If Plaintiff had requested only declaratory and injunctive relief, this Court could properly certify the class pursuant to 23(b)(2) without further analysis. *See, e.g., Allison,* 151 F.3d at 411.

In addition to seeking declaratory and injunctive relief, however, Plaintiff also seeks extensive monetary relief, including compensatory damages based on lost wages, lost benefits, loss of future earnings and earning capacity, damages for pain and suffering, emotional upset, embarrassment, humiliation, "loss of life's pleasures," and "other injuries," and punitive damages. Amd. Compl. at ¶ 39 and (a)–(m). When a putative class representative requests monetary damages in addition to declaratory and injunctive relief, the Rule 23(b)(2) analysis become more complicated. As the Fifth Circuit has explained,

> Rule 23(b)(2) is silent as to whether monetary remedies may be sought in conjunction with injunctive or declaratory relief. The Advisory Committee Notes on Rule 23 state that class certification under (b)(2) "does not extend to cases in which the

appropriate final relief relates exclusively or *predominantly* to money damages." Fed.R.Civ.P. 23 (advisory committee notes) (emphasis added).

*Allison,* 151 F.3d at 411.

The question of whether monetary claims predominate over claims for declaratory and injunctive relief is critical because Rule 23(b)(2)'s rationale and attendant procedural protections are predicated on the preeminence of homogenous interests of the putative class. In *Lemon v. Int'l Union of Operating Engineers, Local No. 139,* 216 F.3d 577, 580 (7th Cir.2000), a case relied upon by the Plaintiff, the Seventh Circuit offered the following comprehensive explanation of the significance of this inquiry:

> The problem is that Rule 23(b)(2) provides for binding litigation on all class members without guarantees of personal notice and the opportunity to opt out of the suit. By virtue of its requirement that the plaintiffs seek to redress a common injury properly addressed by a class-wide injunctive or declaratory remedy, Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members. A suit for money damages, even if the plaintiffs seek uniform, class-wide equitable relief as well, jeopardizes that presumption of cohesion and homogeneity because individual claims for compensatory or punitive damages typically require judicial inquiry into the particularized merits of each individual plaintiff's claim. Indeed, in recognition of the potential divergence of interests within the class, each class member in actions for money damages is entitled as a matter of due process to personal notice and an opportunity to opt out of the class action. *See Ortiz v. Fibreboard Corp.* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). Accordingly, Rule 23(c)(2) guarantees those rights for each member of a class certified under Rule 23(b)(3). *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Fed.

R.Civ.P. 23(c)(2). However, the Federal Rules of Civil Procedure do not provide comparable procedural guarantees of those rights for a class certified under subsections (b)(1) or (b)(2), and as a result, Rule 23(b)(2) certification does not ensure personal notice or opportunity to opt out even if some or all the plaintiffs pray for monetary damages.

*Lemon,* 216 F.3d at 580. Accordingly, this Court may only certify a class under Rule 23(b)(2) if the Court is convinced that the monetary claims asserted by the individual plaintiffs are incidental to the class claim for injunctive relief.

In *Allison,* the Fifth Circuit carefully analyzed the meaning of "predominance" in the context of (b)(2) actions and set forth the following explanation of this concept, which has been widely followed.

> Monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. *Accord Williams v. Owens-Illinois, Inc.,* 665 F.2d 918, 928–929 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief ... Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established [citations omitted]. That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief ... Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

*Allison,* 151 F.3d at 415.

▮ Applying this analysis to Plaintiff's claim, it is clear that with respect to dam-

ages, Plaintiff's monetary claims are not incidental to Plaintiff's claims for injunctive and declaratory relief. Plaintiff seeks to minimize the significance of this individual and inherently fact-specific inquiry in her motion for class certification by insisting that the "majority of the relief sought is equitable and will benefit all plaintiffs." Pl.'s Br. at 16. Plaintiff's Amended Complaint, however, which details the monetary relief to which Plaintiff believes she is entitled, flatly belies this assertion. "Damages can be awarded only after proof of discrimination and injury specific to the individual plaintiff." *Lemon,* 216 F.3d at 581. Even if the members of the proposed class prove that the EEBOP affirmative action policy is illegal, each individual class member pursuing damages would still have to establish that his or her injury was caused by the EEBOP and the damages she or he sustained as a result of the EEBOP. *See Lemon,* 216 F.3d at 581. In other words, should Plaintiff, or any other putative class member, ultimately demonstrate that he or she suffered injuries as a result of Harrah's allegedly unconstitutional EEBOP and the affirmative action policies and practices adopted by Harrah's pursuant to the EEBOP, calculation of the amount of compensatory and/or punitive damages to which that individual would be entitled would necessarily be determined through a fact-specific inquiry as to the circumstances of that individual's employment or application for employment at Harrah's. Accordingly, I conclude that although the declaratory and injunctive relief sought by the Plaintiff and the class may be properly asserted under Rule 23(b)(2), the damage claims may not.

## 2. Rule 23(b)(3)

In *Lemon,* the Seventh Circuit identified three alternative ways a District Court might handle a class claim, such as this one, in which plaintiffs present claims for declaratory and injunctive relief which may be resolved under Rule 23(b)(2), together with claims for damages which may only be properly evaluated under Rule 23(b)(3). The first option is to certify that portion of the class which alleges similar damages claims as a

class under Rule 23(b)(3) for all proceedings. Because class members have the option to opt out under Rule 23(b)(3), this option achieves the goal of judicial economy through class-wide adjudication of common claims without comprising the due process rights of class members. *Lemon*, 216 F.3d at 581. The second option, and the one which Plaintiff has requested here, is a divided certification procedure, also known as "hybrid" or "bifurcated" certification. In a divided certification procedure, the District Court may certify a Rule 23(b)(2) class for that portion of the case addressing equitable relief and a Rule 23(b)(3) class for the portion of the case addressing damages. As the Seventh Circuit explained, "[t]his avoids the due process problems of certifying the entire case under Rule 23(b)(2) by introducing the Rule 23(b)(3) protections of personal notice and opportunity to opt out of the damages claim." *Id.* Finally, the third option identified by the Seventh Circuit is that the District Court may certify the class under Rule 23(b)(2) for both monetary and equitable remedies "but exercise its plenary authority under Rules 23(d)(2) and 23(d)(5) to provide all class members with personal notice and opportunity opt out, as though the class was certified under Rule 23(b)(3)." *Id.* at 582.

I have already concluded that the Plaintiff class is entitled to certification, pursuant to Rule 23(b)(2), of its claim for injunctive relief and declaratory judgment challenging the legality of Defendants' EEBOP. For the reasons set forth above, however, I concluded that the class claims for damages, because they are not incidental to the class claims for declaratory and injunctive relief, could not be certified under Rule 23(b)(2).

Accordingly, Plaintiff now urges this Court to pursue the second alternative identified by the Seventh Circuit in *Lemon*. Specifically, the Plaintiff asks the Court to certify the class under 23(b)(2) on Plaintiffs' claim for declaratory and injunctive relief, and either simultaneously certify a separate class for damages pursuant to 23(b)(3), or, in the alternative, suspend ruling on the certification of a 23(b)(3) class pending resolution of the 23(b)(2) claims for injunctive and declaratory relief. *See* Pl.'s Supp. Reply Br. at 4–5; *see*

*also Shores v. Publix Super Markets, Inc.*, 1996 WL 407850 (M.D.Fla.1996) (using hybrid certification procedure).

Defendants argue that, terminology and novel pleadings aside, Plaintiff has simply failed to satisfy the requirements for class certification on the class claim for damages under either Rule 23(b)(2) or Rule 23(b)(3). Accordingly, Defendants contend that Plaintiff is not entitled to pursue her damage claims as a representative of the class. *See* Defs.' Br. at 45.

A plaintiff who seeks class certification under Rule 23(b)(3) must demonstrate that "questions of law or fact common to members of the class predominate over any questions affecting only individual members [predominance], and that a class action is far superior to other available methods for the fair and efficient adjudication of controversy [superiority]." Fed.R.Civ.P. 23(b)(3); *see also Newton*, 259 F.3d 154 at 181; *Cannon*, 184 F.R.D. at 545. "The predominance inquiry focuses on whether the efficiencies gained in resolving these common issues together are outweighed by the individual issues presented for adjudication." *Cannon*, 184 F.R.D. at 545. With respect to the superiority inquiry, Rule 23(b) provides four non-exclusive factors to guide the court's determination of whether a class action is superior to other available methods of fairly and adequately adjudicating a controversy:

1. The interests of individual members of the class in individually controlling the prosecuting of the action;

2. The extent of litigation commenced elsewhere by class members;

3. The desirability of concentrating claims in a given forum; and

4. The management difficulties likely to be encounters in pursuing the class action.

*Cannon*, 184 F.R.D. at 546; *see* Fed. R.Civ.P. 23(b).

Indeed, beyond suggesting that the court employ a bifurcated certification process and asking the Court to suspend its ruling on Plaintiff's ability to certify a Rule 23(b)(3) class for damages, the Plaintiff has not briefed either the "predominance" or "superi-

 

ority" inquiries. *See* Pl.'s Br. at 23–27. The burden is on the Plaintiff to demonstrate the class's ability to meet the certification requirements necessary to maintain a class action. *See Barnes v. American Tobacco, Inc.,* 176 F.R.D. 479 (E.D.Pa.1997), *aff'd,* 161 F.3d 127 (3d Cir.1998), *cert. denied,* 526 U.S. 1114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999). Accordingly, because Plaintiff has not presented any argument as to either:(1) why this Court should stay its decision on Plaintiff's ability to certify a damages class under Rule 23(b)(3) until the Court had ruled on the merits of the plaintiff class's claim for declaratory and injunctive relief under Rule 23(b)(2); or (2) why the proposed class is suitable for or entitled to be certified as a class for damages under Rule 23(b)(3), I shall deny Plaintiff's motion for hybrid or bifurcated certification.

In sum, I conclude that Osgood has satisfied the requirements of Fed.R.Civ.P. 23(a) by demonstrating numerosity, commonality, typicality, and adequacy of representation between herself and a putative class of plaintiffs, defined as all Caucasians who sought employment opportunities or benefits from Harrah's between 1998 and the present and who were subject to Harrah's EEBOP affirmative action policy. Additionally, Plaintiff demonstrated that this claim is appropriate for maintenance as a class action under Fed. R.Civ.P. 23(b)(2) because the party opposing the class, in this case, Harrah's, has acted pursuant to grounds generally applicable to the class, namely, its EEBOP affirmative action policy, rendering appropriate Plaintiff's request for final injunctive relief with respect to the class as a whole. Because Plaintiff has not demonstrated that the maintenance of a class claim as to damages satisfies either the predominance or superiority criteria of Rule 23(b)(3), I shall deny Plaintiff's motion to certify a class to recover damages.

## V. CONCLUSION

For the reasons set forth above, the Plaintiff's motion for class certification shall be

granted in part and denied in part. Pursuant to Fed.R.Civ.P. 23(a) and 23(b)(2), I shall certify the following class:

> All Caucasian employees of Harrah's and job applicants to Harrah's, between 1998 and the present, who claim that they were denied employment opportunities or suffered adverse employment decisions at Harrah's on the basis of race, due to Harrah's EEBOP and the affirmative action policies adopted to implement the EEBOP, and who seek declaratory and injunctive relief under 42 U.S.C. §§ 1981, 1983 and the NJLAD.

I shall deny Plaintiff's motion for certification of a class action for damages pursuant to Fed. R. Civ. P 12(b)(2) and 12(b)(3), and I shall also deny Plaintiff's motion for a "hybrid" certification whereby the Court would stay its ruling on the certification of class damage claims under Rule 23(b)(3) pending resolution of the question of Defendants' liability under Rule 23(b)(2). The Court shall enter an appropriate form of order.